UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Edwin Lopez, | No. 1:26-cv-00093-GSA |
| Plaintiff, | **OPINION & ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT COMMISSIONER OF SOCIAL SECURITY AND AGAINST PLAINTIFF** |
| v. | |
| Commissioner of Social Security, | |
| Defendant. | (ECF Nos. 9, 11) |

### I.    Introduction

Plaintiff Edwin Lopez seeks judicial review of a final decision of the Commissioner of Social Security denying his application for disability insurance benefits (SSDI) and supplemental security income (SSI) pursuant to Titles II and XVI of the Social Security Act.

### II.    Procedural Background

On February 15, 2023, and May 17, 2023, Plaintiff applied for SSDI and SSI, respectively. In both applications Plaintiff alleged disability as of March 21, 2022.  These claims were denied initially on May 24, 2023, and upon reconsideration on June 28, 2024.

On April 14, 2025, a hearing was held before an ALJ.  On May 27, 2025, the ALJ issued an unfavorable decision.  The Appeals Council denied the request for review on December 4, 2025, Plaintiff then filed a complaint in this Court.[1]

---

[1] The parties consented to the jurisdiction of a United States Magistrate Judge. ECF No. 14, 15

1

### III.    <u>The Disability Standard</u>

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a Claimant disability benefits.  "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted).  Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is more than a scintilla, but it is less than a preponderance.  *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation and quotations omitted).

When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and quotations omitted).  If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the Agency's decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted).  "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if . . . his/her physical or mental impairment or impairments are of such severity that s/he is not only unable to do his/her previous work, but cannot, considering his/her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which s/he lives, or whether a specific job vacancy exists for him/her, or whether s/he would be hired if s/he applied

for work.  42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for an ALJ to employ when evaluating the alleged disability of a claimant.  20 C.F.R. §§ 416.920(a)-(f).  The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled.  20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: 1- whether the claimant has engaged in substantial gainful activity during the period for which Plaintiff is alleging he or she experiences a disability; 2- whether the claimant has a medically determinable "severe impairments" affecting the claimants ability to perform basic work activities; 3- whether these impairments meet or are medically equivalent to one of the listed impairments set forth in the agency's regulations (20 C.F.R. § 404, Subpart P, Appendix 1); 4- whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work; and 5- whether the claimant has the ability to perform other jobs existing in significant numbers at the national and regional level.  20 C.F.R. § 416.920(a)-(f).  While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given the claimant's RFC, age, education and work experience.  *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

**IV.    The ALJ's Decision**

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of March 21, 2022.  AR 24.  At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the cervical and lumbar spine.  AR 25.

At step three, the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR 25.

Prior to step four, the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except:

the claimant is occasionally able to climb ramps and stairs, and is never able to climb

ladders, ropes and scaffolds. The claimant is frequently able to crouch and kneel and is occasionally able to crawl and stoop.

AR 25–29

At step four, the ALJ found that Plaintiff was unable to perform his past relevant work as a repairer helper (heavy exertional work).  AR 29.  At step five, relying on the Vocational Expert's testimony, the ALJ found that considering the Plaintiff's vocational profile (age, education, work experience and RFC), Plaintiff could perform the following jobs existing in significant numbers in the national economy: small parts assembler, cannery worker, and agricultural sorter.  AR  30.

Accordingly, the ALJ concluded that the Plaintiff was not disabled at any time since the alleged disability onset date of March 21, 2022.  AR 31.

## V.    Issues Presented

Plaintiff asserts three claims of error: 1- The ALJ failed to provide clear and convincing reasons for discounting Plaintiff's allegations of pain and dysfunction; 2- The ALJ failed to properly evaluate the treating medical source opinion of Khen Xiong, P.A.-C; and 3- The ALJ failed to properly evaluate the examining medical source opinion of the internal medicine consultative examiner Dale Van Kirk, M.D.

### A.    Subjective Symptoms, RFC

#### 1.    Applicable Law

Before proceeding to steps four and five, the ALJ determines the claimant's residual functional capacity (RFC) which comprises the most that a claimant is still capable of doing despite the claimant's particular limitations.  This RFC represents an assessment "based on all the relevant evidence" contained within the Certified Administrative Record.  20 C.F.R. § 416.945(a)(1).  The residual functional capacity must consider all of the claimant's impairments, whether those impairments are severe or non-severe.  20 C.F.R. §§ 416.920(e), 416.945(a)(2). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

An ALJ performs a two-step analysis to determine whether a Plaintiff's testimony regarding

subjective pain or symptoms is credible. *See Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Smolen*, 80 F.3d at 1281; S.S.R 16-3p at 3. First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014; *Smolen*, 80 F.3d at 1281–82. If the claimant satisfies the first step and the ALJ finds that there is no evidence of malingering in the record, the ALJ must then evaluate the intensity, persistence and limiting effects of the claimant's symptoms to determine the extent to which those symptoms limit the individual's ability to perform work-related activities. S.S.R. 16-3p at 2.

An ALJ's evaluation of a claimant's testimony must be supported by specific, clear and convincing reasons. *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014); *see also* S.S.R. 16-3p at *10. Subjective testimony cannot be rejected on the sole ground that the testimony is not entirely corroborated by the objective medical evidence in the record. Nevertheless, the medical evidence is still a relevant factor in determining the severity of Claimant's pain and its disabling effects. See, *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); S.S.R. 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).

In addition, other factors considered are: 1- daily activities; 2- the location, duration, frequency, and intensity of pain or other symptoms; 3- any applicable precipitating and aggravating factors; 4- the type, dosage, effectiveness, and side effects of any prescribed medication; 5- treatment other than medications that the claimant receives; 6- any other measures the claimant uses to relieve pain or other symptom;  and 7- other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. See, 20 C.F.R. § 416.929(c)(3).

### 2.    Analysis

#### a.    Factual Background; Subjective Symptoms

Plaintiff was involved in a motor vehicle accident on March 19, 2022 during which he injured his neck and back. See, e.g. AR 528. Plaintiff testified that he was not able to work due to pain in his back and neck that radiated to his hands and feet (AR 44), and that his hands went numb at times and he had difficulty lifting anything. AR 44. Plaintiff reported that his pain was sharp, aching, and severe. AR 415. He reported that his pain was constant. AR 415. He also reported

that his pain increased with standing, lifting, bending, sitting, walking, and holding objects. AR 415. He testified that he was able to lift 5 pounds (AR 44), that he needed to change his position throughout the day to try to ease his pain (AR 46), and that he was only able to sit or stand for 20 minutes at a time (AR 46–47).

**b.    Objective Evidence**

Plaintiff's Imaging revealed moderate degenerative discopathy at L4-L5, bulging discs at L4-L5, moderate degenerative discopathy at C5-C6, and broad-based disc bulge narrowing the central canal with encroachment of C6 left exiting nerve root. AR 537–539

Examinations noted L5 tenderness, reduced lumbar ROM, antalgic gait, cervical tenderness, reduced cervical ROM, cervical muscle spasm, positive cervical provocation test, wrist and elbow positive Tinel's sign, bilateral positive straight leg raise, reduced bilateral hip ROM, and reduced sensation in left shin. AR 533–34, 550–57, 571, 581–85.

Plaintiff's clinicians placed him on leave in May 2022, July 2022, September 2022 and August 2024. AR 524–29, 554. In June 2022 and August 2022 Plaintiff received SI joint steroid injections which gave him temporary pain relief. AR 523–26, 568. In February 2023, Plaintiff received L4-L5 facet joint and transforaminal epidural steroid injections which provided 40% lower back pain relief, but no relief of radicular pain. AR 581.

Due to ongoing radicular pain Plaintiff was referred to a neurosurgeon, Dr. Najafi. AR 524. Dr. Najafi found that Plaintiff's disc herniation at L4-L5 warranted lumbar discectomy and disc decompression. AR 581.

The agency arranged for Plaintiff to attend a physical consultative examination with Dr. Van Kirk in June 2024. AR 596. Plaintiff reported radicular cervical and lumbar pain (AR 593) and an inability to perform any household chores (AR 594). The examination noted generalized discomfort and ROM in his cervical spine, dorsolumbar spine, shoulder joint pain, and numbness in his upper and lower extremities (AR 595–96).

**c.    Discrediting Plaintiff's testimony**

Because the ALJ found that Plaintiff's impairments "could reasonably be expected to cause

the alleged symptoms" and found no malingering (AR 26), the ALJ was required to identify clear and convincing reasons for rejecting Plaintiff's testimony concerning pain and other limiting symptoms. Here, supported by the discussion below, the ALJ appropriately concluded that the Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." AR 26.

### /1/    Imaging

To begin, the ALJ covered the imaging findings in detail (AR 26). Here, Plaintiff focuses on two of them. First, Plaintiff highlights a May 1, 2022 post-car accident MRI that "revealed moderate degenerative discopathy at L4-L5, bulging discs at L4-L5." However, the radiologist characterized the bulging disc as "very mild disc bulging." AR 26 (citing AR 537). Second, Plaintiff emphasizes moderate degenerative discopathy at C5-C6 with broad based bulge narrowing the central canal with encroachment of the left exiting C6 nerve root (AR 539), yet the radiologist's description of the C6 left exiting nerve root encroachment was "mild to moderate." AR 539.

These two post-accident imaging findings of "very mild disc bulging," and mild to moderate C6 nerve root encroachment, coupled with the finding set forth above of  moderate degenerative discopathy at C5-C6, whether  considered singularly or in combination, fail to establish Plaintiff's assertions that his radiating pain and numbness were so severe that he could only lift 5 pounds and sit or stand for only 20 minutes at a time.  AR 44–46.

### /2/    Physical Examinations

As for physical examinations and treatment, Plaintiff was examined on April 13, 2022, about one month post the March 19, 2022 car accident. AR 532. The ALJ noted that Plaintiff was given pain medication and muscle relaxants, yet he still complained of severe pain radiating from the neck and back into the upper and lower extremities. AR 26. On exam, Plaintiff was very tender

and painful at the L4 – L5 spinous process, either side of the midline, walked slightly flexed forward at the waist, complained of pain getting in and out of his chair and while getting on and off the exam table.  AR 533–34.

His primary tenderness was located at about the L5 spinous process.  AR 26, citing AR 533–34.    Range of motion of the low back was poor, but lower extremity motor tone was intact. Id.  He was tender to palpation at the C6 – C7 spinous process. There was some tenderness to either side of the midline and reduced ROM.  Upper extremity motor strength was normal. Id. There was tenderness around T6.  Id.

Despite continued complaints of pain and spasm, physical examinations showed normal motor tone, flexion and extension, and sensation in all extremities.   AR 524–29.

On September 1, 2022, Plaintiff was referred to neurosurgery due to worsening radicular pain. AR 524.  At a November 14, 2022 neurological spine consultation, Plaintiff reported that he took NSAIDs as needed for pain and that his lower extremity radicular pain was 6-7/10 which limited mobility.  On exam, Plaintiff displayed mild to moderate tenderness to lumbar palpation, decreased ROM, decreased sensation, but normal gait, normal motor strength, and normal overall cervical spine findings.  AR 583–85.

A neurological spine exam on March 6, 2023 showed mild-to-moderate lumbar tenderness to palpation, decreased ROM and sensation, but otherwise normal. He reported partial improvement of back pain with facet injection, but radiculopathy persisted.  AR 581.

A June 2, 2024 physical consultative exam with Dr. Van Kirk, M.D. revealed that Plaintiff walked slowly, got on and off the bench slowly but without limp, had generalized discomfort in cervical and lumbar spine and decreased ROM, that deep tendon reflexes were absent in all extremities, that he had normal motor strength and sensation and his straight leg raise was normal. AR 594–96. It was also noted that Plaintiff used minimum effort during the exam. AR 594–96.

8

August and December 2024 exams noted antalgic gait, no assistive device, continued TTP and muscle spasms of the cervical and lumbar spine, straight leg raise was positive, ROM of the hips was decreased, and motor strength was 4.5-5/5 as to extremities.  AR 550–57.

A timeline of Plaintiff's physical exams show the following as to tenderness to spinous process, midline, and/or paraspinals in lumbar and cervical muscles: 1- <u>Very tender</u> in April 2022, roughly 1 month post March 2022 car accident (AR 533–34); 2- <u>Mild-to-moderate</u> tenderness 8 months post car accident in November 2022 (AR 583–85); 3- <u>Mild-to-moderate</u> tenderness to palpation in March 2023 (AR 581); and, 4- <u>Generalized discomfort</u>  at a June 2024 consultative exam  (AR 581; 594-96).

From the various findings set forth above, it appears that  Plaintiff's tenderness to palpation seem to have progressively decreased in the months and years following the March 2022 car accident; that Plaintiff's pain was consistently reported as moderate to severe,  though back pain abated somewhat with injections while radicular pain remained; that Plaintiff's range of motion was consistently limited; that Plaintiff's motor tone, motor strength and extremity sensation were consistently normal; that Plaintiff's straight leg raised findings were mixed, some positive and some negative; and, that  Plaintiff's gait was at times normal and at times antalgic.

To accommodate these findings, the record reveals that the ALJ took into consideration: 1- that Plaintiff's range of motion was consistently limited by addressing it in the RFC, e.g., frequently able to crouch and kneel and is occasionally able to crawl and stoop; 2- that as to Plaintiff's overall physical findings,  they are reasonably  accounted for in the RFC and appropriate for at least one of the three identified jobs Plaintiff was found capable of performing (see, below). Further, even if the Agency's non disability decision could reasonably have been found to support the opposite conclusion, when evidence can reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the Agency's decision.  *Jamerson v.*

*Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted).

As an illustration of this deference afforded the Agency's decision, on the one hand it is certainly reasonable to conclude that Plaintiff's physical examination findings do reflect significant limitations, and to some extent corroborate Plaintiff's consistent complaints of moderate to severe pain, particularly lumbar radicular pain.  However, on the other hand, it is equally reasonable to conclude that these physical findings do not support the extreme limitations Plaintiff identified, namely inability to lift more than 5 pounds along with an inability to sit or stand more than 20 minutes at a time. As such, when considering the reduced range of sedentary work provided for in the RFC, arguably a reasonable accommodation of Plaintiff's limitations, it is in accord with this stated deference.

> **B.** **Opinions**

> **1.** **Applicable Law**

Before proceeding to steps four and five, the ALJ determines the claimant's residual functional capacity (RFC) which is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. § 416.945(a)(1). The RFC must consider all of the claimant's impairments, severe or not.  20 C.F.R. §§ 416.920(e), 416.945(a)(2). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

For applications filed on or after March 27, 2017, new regulations eliminate a hierarchy of medical opinions and provide that "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."  20 C.F.R. § 404.1520c(a).  Instead, when evaluating any medical opinion, the regulations provide that the ALJ will consider the factors of supportability, consistency, treatment relationship, specialization and other factors.  20 C.F.R. §

10

404.1520c(c).

Supportability and consistency are the two most important factors, and the agency will articulate how the factors of supportability and consistency are considered. Id. "Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods v. Kijakazi*, 2022 WL 1195334, (9th Cir. Apr. 22, 2022) at *6.

With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1). Regarding "consistency," the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(2).

### 2.    **Analysis**

#### a.    **P.A.-C. Xiong**

Plaintiff's treatment provider Khen Xiong, P.A.-C., opined that Plaintiff was able to lift only 5 pounds for 2 to 3 hours each day, was only able to sit for 30 minutes at a time and for 2 hours total in a workday, was only able to stand/walk for 30 minutes at a time and for 2 hours total in a workday, and needed to lie down the rest of the work day. AR 546. P.A.-C Xiong indicated that his opinion was based on Plaintiff's moderate severe low back pain and Plaintiff's herniated disc (Tr. 546).

Plaintiff argues as follows:

First, the ALJ found that Mr. Xiong's medical opinion was based on Plaintiff's subjective reports and not on objective medical evidence (Tr. 29). However, contrary to the ALJ's findings, Mr. Xiong specifically stated that Plaintiff's herniated disc was the objective finding that he based his opinion on (Tr. 546). And the record supported Mr. Xiong's basis. As discussed above, a May 2022 MRI of Plaintiff's lumbar spine showed moderate degenerative discopathy at L4-L5 with disc bulging (Tr. 537), and a May 2022 MRI of Plaintiff's cervical spine showed moderate degenerative discopathy at C5-C6 with broad based bulge

11

narrowing the central canal with encroachment of the exiting left C6 nerve root (Tr. 539). Such abnormal diagnostic findings were sufficient support for Mr. Xiong's medical opinion. Thus, contrary to the ALJ's findings, Mr. Xiong's medical opinion was based on objective findings – not merely Plaintiff's statements.

MSJ at 13.

Initially, it is important to note that the imaging findings along with ALJ's discussion of them, support a reasonable finding that Plaintiff was not limited to a less than sedentary exertional capacity, namely 5 pounds of weightlifting, and 20-30 minutes of consecutive sitting and standing/walking for a total of two hours in a workday.

Next, even though Plaintiff does take appropriate issue with the ALJ's finding that P.A.-C Xiong's opinion was based solely on Plaintiff's subjective complaints when P.A.-C Xiong clearly stated that his opinion was based in part on disc bulging, the bulging was "very mild disc bulging." AR 26 (citing AR 537).

Plaintiff also points to the functional implications/limitations that exist based on the medical opinions derived from both the physical examinations and imaging findings. But again, as explained earlier, these examinations and imaging findings do not support the extreme limitations Plaintiff asserts.

Thus, Plaintiff's discussion here fails to demonstrate harmful error, especially considering the deference afforded the Agency.

### b.    Dr. Van Kirk

The consultative examiner, Dr. Van Kirk, opined that Plaintiff was able to stand/walk for 6 hours in a workday, was able to sit without limitation, was able to lift and carry 10 pounds frequently and 20 pounds occasionally, was able to occasionally perform postural activities, and needed to avoid extremely cold or damp environments. AR 596. Dr. Van Kirk further opined that Plaintiff was capable of a reduced range of light exertional work.

In relevant part, Plaintiff highlights the following, 1- while Dr. Van Kirk's opinion found

12

that Plaintiff was only able to occasionally perform postural activities (AR 596), the ALJ in contrast found that Plaintiff was able to frequently crouch and kneel (AR 25), and 2- while Dr. Van Kirk opined that Plaintiff needed to avoid extremely cold or damp environments (AR 596), the ALJ's residual functional capacity finding did not include any environmental limitations (AR 25). Based on these differences the Plaintiff contends that when "… the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p.

However, this social security ruling requires only that the ALJ explain why an opinion was rejected but does not require the ALJ to explain every instance where the RFC fails to mirror the medical opinion in question. Moreover, the RFC need not mirror a particular opinion as it is an assessment formulated by the ALJ based on all relevant evidence. See 20 C.F.R. §§ 404.1545(a)(3); Stubblefield v. Kijakazi, 2023 WL 2136933, at *7 (E.D. Cal. Feb. 21, 2023).

Further, Dr. Van Kirk's restrictions discussed above have not been shown by Plaintiff to have particular significance. For example, Dr. Van Kirk opined to an environmental restriction that Plaintiff avoid working in extremely cold or damp environments. However, this restriction would not preclude at least one of the jobs identified by the VE, namely small parts assembler. Thus, it this environmental restriction would not be outcome determinative. And, as to Dr. Van Kirk's opinion regarding Plaintiff being limited to performing only occasional postural activities, the RFC seems to have appropriately met this restriction by limiting Plaintiff to occasional crawling and stooping.

In sum, the ALJ's obligation under SSR 96-8p to explain why an opinion was rejected does not obligate the ALJ to explain each and every facet of the RFC where it differs from an opinion in the record, and the Court is unaware of authority suggesting that such a level of specificity is required.

13

## VI.   Conclusion and Order

Substantial evidence and applicable law support the ALJ's conclusion that Plaintiff was not disabled.

Accordingly, it is ordered that:

1. Plaintiff's motion for summary judgment (Doc. 9) is **DENIED**.

2. Defendant's cross motion (Doc. 11) is **GRANTED.**

3. The Commissioner's Decision is **AFFIRMED**

4. The Clerk of Court is directed to enter judgment in favor of Defendant Commissioner of Social Security and against Plaintiff.

IT IS SO ORDERED.

Dated:   **May 20, 2026**                          **/s/ Gary S. Austin**
                                                          UNITED STATES MAGISTRATE JUDGE

14